(46 Misc. Rep. 237.)

## DURACK v. WILSON et al.

(Supreme Court, Special Term, Nassau County. January, 1905.)

BANKRUPTCY—FRAUDULENT CONVEYANCE. ·

> Defendant, several years before adjudication as bankrupt, on justifying as surety on an appeal bond from a judgment against a· corporation of which her husband was president, made oath that she was a freeholder and owned an undivided one-half in certain unincumbered real estate. In a month after judgment was confirmed she conveyed her interest to her sister for $2,500, after mortgaging it for $2,500 loaned to her husband; and, in a month after judgment against her on the bond, she filed a petition in bankruptcy, stating as her assets wearing apparel worth $25. · *Held*, *t*hat the mortgage would be set aside as fraudulent, and the deed to the sister, which was in fact a mortgage to secure a valid debt, would also be set aside on payment of the amount still owing.

Action by John H. Durack, trustee in bankruptcy, against Hattie P. Wilson and others. Judgment for plaintiff.

Henry L. Maxson, for plaintiff.
Otto H. Droege and Henry M. Flateau, for defendants.

KELLY, J. The plaintiff, as trustee in bankruptcy of the defendant Hattie P. Wilson, brings this suit in equity to set aside a mortgage dated April 1, 1901, made by the bankrupt to the defendant Gordon to secure the sum of $2,500, and a deed made by the bankrupt to her sister, the defendant Weeks, dated April 8, 1901, for the alleged consideration of $2,500. The property transferred by the mortgage and deed was the bankrupt's undivided one-half part of a parcel of 2½ acres of land situated at Locust Valley, near Peacock Point, in Nassau county. The mortgage and deed were acknowledged before one Kraus, as notary public—the mortgage on April 1, and the deed on April 8, 1901; a certificate of the clerk of New York county to the official character of the notary is attached to each instrument, dated April 12, in each case; and the mortgage and deed were recorded together on April 17, 1901.

It appears that in October, 1900, one Stuart, an iron manufacturer in New Hamburg, Dutchess county, recovered a judgment for $291.29 against the Manhattan Bath Tub Company in a Municipal Court in the city of New York. The defendant company appealed from this judgment, and stayed the execution by an undertaking dated November 8, 1900, on which the bankrupt became surety; making oath that she was a freeholder, and justifying by affidavit

that she owned the undivided one-half of the real estate subsequently conveyed in the mortgage and deed which are now attacked. She made oath that the whole property was worth $10,000, and that it was unincumbered; that it belonged to her sister, the defendant Weeks, and herself, as heirs of their deceased mother. The judgment of the Municipal Court was affirmed on March 4, 1901. Execution was issued against the bath tub company, and returned unsatisfied. The judgment creditor brought suit in this court against the bankrupt on the undertaking, recovering a judgment for $398.47 on February 20, 1902. Execution was issued upon this judgment against the defendant Wilson, which was returned unsatisfied. In December, 1900, the defendant Wilson, whose undertaking and justification as surety had stayed the execution of Stuart's judgment, together with her sister, the defendant Weeks, executed a mortgage on the Locust Valley property to one Hagar to secure $2,500. This mortgage is not attacked in this suit. It was executed during the pendency of the appeal, and while the stay accomplished by Mrs. Wilson's undertaking was in force. On the trial of this case it appears that the entire sum secured was turned over to Mrs. Wilson's husband; that is, her sister, Mrs. Weeks, mortgaged her half share with the half interest of Mrs. Wilson for the purpose of supplying funds to Wilson, who was the president of the original debtor, the bath tub company. In April, 1901, less than a month after the affirmance of the judgment, presumably while the execution against the bath tub company was in the hands of the sheriff, the defendant Wilson executed the mortgage to Gordon and the deed to her sister which the plaintiff now seeks to set aside. Stuart entered his judgment against Mrs. Wilson on her undertaking on February 20, 1902; and on March 17, 1902, she filed her petition in voluntary bankruptcy, stating her indebtedness at $2,200, and her assets as wearing apparel worth $25.

On the trial here the plaintiff offered proof of statements substantiating his claims made by the defendant Mrs. Wilson and her sister and the defendant Gordon, under oath, before the referee in bankruptcy. He also proved by one Hughes, an attorney in New York, that Gordon had stated that the mortgage now attacked was not a bona fide mortgage. The defendant Mrs. Wilson and her husband were in court, but were not called to the stand. Mrs. Weeks testified that at the time of the conveyance her sister owed her the $1,250, one-half of the Hagar mortgage, which she had turned over to her in December, 1900, and that she had loaned her at different times, in small sums, of which no account was kept, over $1,000. At the time the deed was made to Mrs. Weeks, the latter knew of Stuart's claim; knew that he had a judgment against her sister, the defendant Wilson, and that he was endeavoring to collect it. She testified to a valid indebtedness from Mrs. Wilson to her of $1,250, and, in a less satisfactory way, to an additional indebtedness of $1,000, or $2,250 in all. Gordon says the mortgage for $2,500 was for a valid consideration, because Mrs. Wilson had agreed to be responsible for moneys which he thereafter loaned to her husband, John O. Wilson, and he says he did loan him $2,500 in varying

amounts at different times. No books, memoranda, or other writings are produced by Mr. Gordon to corroborate these statements. Mr. Wilson was not called as a witness. The attorney for the original defendant, the bath tub company, was the attorney who procured and filed the undertaking on which Stuart's execution was stayed. He was Mrs. Wilson's attorney in resisting Stuart's demand for a judgment against her on the undertaking. He was attorney for Mrs. Wilson in her bankruptcy proceedings, and represented her and her sister, Mrs. Weeks, on this trial.

I am convinced that the mortgage to Gordon was fraudulent; that it was without consideration, and part of a scheme to defraud Mrs. Wilson's creditors; and that Gordon was a party to the transaction. Whether or not Gordon advanced the money alleged to Wilson is not very clear, on the testimony. If he did, it is remarkable that no account, memorandum, or receipt was produced to verify his statement; but, if the money was advanced, I am satisfied that the claim that it was advanced on Mrs. Wilson's credit, or because of any agreement on her part to repay it, is an afterthought. While it is true that the statute of frauds is a personal defense, and that the verbal promise of Mrs. Wilson to answer for her husband's debt, if made, would be valid as against the plaintiff (Livermore v. Northrup, 44 N. Y. 108; De Hierapolis v. Reilly, 44 App. Div. 22, 60 N. Y. Supp. 417; Brown v. Hall, 5 Lans. 177), the fact that the alleged advances and the alleged promises by Mrs. Wilson are uncorroborated in any way is material. As was said by Mr. Justice Hiscock in Breen v. Henry, 34 Misc. Rep. 237, 69 N. Y. Supp. 631:

"There is no satisfactory evidence of any definite arrangement between the people. There was no note or written acknowledgment of any kind evidencing this indebtedness. No account was presented showing its inception, continuation, or termination. No receipt or other written evidence was given to show that it was canceled by the execution of these conveyances."

The entire transaction with regard to this mortgage, considered with reference to the situation and relationship of the parties— the significance of the dates of the instruments with regard to Stuart's proceedings—shows, to my mind, a dishonest attempt to avoid liability on an undertaking given by which legal process was stayed. It seems unfortunate that this defendant, a woman, should have been drawn into such proceedings; but she has voluntarily subjected herself and her property to judgment, and the rights of the creditor, which have been stayed and hampered by her interference, should not be lost by this patent attempt to escape just liability. The mortgage to Gordon should be canceled and set aside as fraudulent.

With regard to the deed of her one-half interest to her sister, at the date of the conveyance I find that there existed a valid indebtedness for $2,250. If this deed of April 8, 1901, was to be treated as a deed absolute, I would hesitate in denying the plaintiff relief, because Mrs. Weeks knew of Stuart's claim and judgment at the time she took the conveyance; and there is much force in the contention, on all the facts, that there was a mutual design to hinder and defraud creditors. In such case the fact that there existed

a valid consideration will not save the transaction. Billings v. Russell, 101 N. Y. 226, 4 N. E. 531; Vogedes v. Beakes, 38 App. Div. 381, 56 N. Y. Supp. 662. I find on all the evidence here, that the deed from Mrs. Wilson to her sister was in legal effect a mortgage to secure her existing debt, and that the defendant Weeks holds the undivided share conveyed by the deed of April 8, 1901, as security for this debt, which is still due and owing, and on payment of which the deed should be canceled and set aside.

The plaintiff is entitled to judgment in accordance with these conclusions, with costs.

Judgment for plaintiff, with costs.